# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL MICHELLE TWILLEY, | ) Case No.: 1:18-cv-0201 - JLT |
| Plaintiff, | ) ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) |
| v. | ) |
| ANDREW M. SAUL[1], Commissioner of Social Security, | ) ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF RACHEL MICHELLE TWILLEY, AND AGAINST DEFENDANT ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY |
| Defendant. | ) |

Rachel Michelle Twilley asserts she is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the ALJ erred in evaluating the medical record related to her mental impairments and seeks judicial review of the decision denying her applications for benefits. Because the ALJ failed to apply the proper legal standards in determining Plaintiff's mental residual functional capacity, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

In November 2013, Plaintiff filed her application for benefits, in which she alleged disability beginning March 3, 2011, due to bipolar disorder and obesity. (Doc. 11-7 at 2) The Social Security Administration denied her applications at the initial level and upon reconsideration. (*See generally* Doc.

---

[1] This action was originally brought against Nancy A. Berryhill in her capacity as then-Acting Commissioner. Andrew M. Saul, the newly appointed Commissioner, has been automatically substituted. *See* Fed. R. Civ. P. 25(d).

1

11-7) Plaintiff requested a hearing and testified before an ALJ on August 18, 2015. (Doc. 11-3 at 17; Doc. 11-6 at 17) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on February 24, 2016. (Doc. 11-3 at 17-30) Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request on December 27, 2017. (*Id.* at 2-5) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.  Medical Background and Opinions[2]**

On March 4, 2014, Dr. Mark Dilger reviewed available records and completed a psychiatric review technique and residual functional capacity assessment. (Doc. 11-7 at 8-9, 11-13) Dr. Dilger opined Plaintiff had mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (*Id.* at 9) He opined Plaintiff was "able to persist at tasks that [she] can learn from one to up to three months on the job with occasional public contact." (*Id.* at 13)

On April 20, 2014, Dr. Preston Davis noted he "did not agree" with the limitations identified by Dr. Dilger, believing new records "caused a change" in Plaintiff's residual functional capacity. (Doc. 11-7 at 24) Dr. Davis opined Plaintiff had no limitations with the ability to understand, remember, and carry out simple instructions; but she was moderately limited with the ability to carry out detailed instructions. (*Id.* at 24) In addition, he believed Plaintiff was not significantly limited with her ability to maintain attention and concentration for extended periods. (*Id.* at 28) According to Dr. Davis,

---

[2] The Court has reviewed the entirety of the medical record, which includes more than 700 pages of treatment notes. Because Plaintiff challenges only the ALJ's evaluation of medical opinions related to her mental impairments, the summary includes only opinions related to Plaintiff's mental impairments.

3

Plaintiff had the ability to sustain concentration, persistence, and pace "for simple and detailed tasks which equate to an SVP of 4," but "[s]he may have difficulty maintaining pace for very complex/ technical duties." (*Id.* at 29)

Dr. Christopher Dang completed a "Mental Residual Functional Capacity Questionnaire" on September 23, 2014. (Doc. 11-20 at 23-27) Dr. Dang noted he began treating Plaintiff in November 2013, and he saw Plaintiff monthly. (*Id.* at 23) Dr. Dang indicated Plaintiff was diagnosed with Bipolar Disorder Type I and Borderline Personality Disorder. (*Id.*) He opined Plaintiff's prognosis was "fair with adherence to medications and appointments" and noted her medication included Lamictal and Klonopin. (*Id.*) According to Dr. Dang, Plaintiff's highest Global Assessment of Functioning Score was 55 in the past year, and her lowest score was a 40.[3] (*Id.* at 24) Dr. Dang opined Plaintiff was likely to be "off task" 20% of an eight-hour day and, compared to an average worker, could be expected to perform a job on a sustained basis for 70% of an eight-hour day. (*Id.* at 24) He believed Plaintiff's impairments precluded her ability to maintain attention and concentration for 10% of an eight-hour day; and "perform at a consistent pace without an unreasonable number and length of rest periods" for 10% of a workday. (*Id.* at 25-26) Further, Dr. Dang indicated Plaintiff had "category III" limitations—which precluded performance for 10% of a workday— with the ability to understand and remember simple instructions, sustain an ordinary routine without special supervision, maintain socially appropriate behavior, respond to changes in the work setting, and set realistic coals or make plans independently of others. (*Id.* at 25-26) Dr. Dang opined Plaintiff's "emotional pathology could exacerbate physical symptoms secondary to [her] inability to have energy/fears to do activities of daily living and exercise. (*Id.*) He indicated that he based his opinions upon Plaintiff's history and medical file; progress and office notes; laboratory reports; and psychological evaluations, reports, and opinions. (*Id.* at 27)

---

[3] Global Assessment of Functioning ("GAF") scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV).
A GAF score between 31-40 indicates a person has "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . .)." *DSM-IV* at 34. A GAF score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id*.

4

1   Dr. J. K. Zhang performed a consultative psychological evaluation on November 6, 2015, after
2   the administrative hearing. (Doc. 11-20 at 35) Dr. Zhang administered the Wechsler Adult Intelligence
3   Scale- IV ("WAIS-IV"), Wechsler Memory Scale- IV ("WMS-IV"), and Trials A- Trails B tests. (*Id.*
4   at 35-36) Dr. Zhang noted Plaintiff "had to take a Klonopin pill during [the] interview because of her
5   anxiety," and she was "tearful during part of the interview." (*Id.* at 36, 38) Examining Plaintiff's
6   memory and concentration, Dr. Zhang Plaintiff was "able to perform simple calculations" and could
7   "spell the word 'world' but not backward." (*Id.* at 37) With the WAIS-IV, Dr. Zhang found Plaintiff
8   was "functioning the extremely low range of intelligence with a Full Scale IQ score of 69." (*Id.* at 39)
9   With the WMS-IV, Dr. Zhang determined Plaintiff's "memory capacity [was] mildly impaired." (*Id.* at
10  40) Dr. Zhang concluded Plaintiff had "below average" results with the Trails Making A and B, which
11  "measure[d] sustained attention, visual search, and psychomotor efficiency." (*Id.*)

12  Dr. Zhang opined Plaintiff had "[n]o impairment" with the "[a]bility to understand, remember,
13  and carry out simple instructions." (Doc. 11-20 at 40) Dr. Zhang believed Plaintiff had moderate
14  impairments with maintaining "concentration, persistence, and pace in common work settings;"
15  maintaining consistent attendance; performing routine work duties; interacting with co-workers,
16  supervisors, and the public; responding appropriately to work situations and changes; and working
17  "without special or additional supervision." (*Id.* at 41) Further, Dr. Zhang believed Plaintiff had
18  moderate impairment with the "[a]bility to understand, remember, and carry out detailed and complex
19  instructions." (*Id.*)

20  **B.    Administrative Hearing Testimony**

21  Vocational expert Robert Raschke testified at an administrative hearing before the ALJ on
22  August 18, 2015. The VE noted Plaintiff's prior employment positions "all fall into the area of human
23  services," and characterized the work under the *Dictionary of Occupational Titles*[4] as yard aide, *DOT*
24  355.674-010; children's institutional attendant, *DOT* 359.677-010; home attendant or personal
25  attendant, *DOT* 354.377-014; and teacher's aide, *DOT* 249.367-074. (Doc. 11-6 at 42) The VE

---

[4] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

observed that under the *Dictionary of Occupational Titles*, each of these positions required a Special Vocational Preparation[5] level 3 and required light or medium levels of physical exertion. (*Id.* at 42-43)

The ALJ asked Mr. Raschke to consider a hypothetical individual who could "lift or carry... occasionally 20 pounds, frequently 10, stand or walk four hours of an eight-hour work day, [and] sit[] about six hours of an eight-hour work day." (Doc. 11-6 at 43) In addition, the ALJ indicated the person could "push or pull consistent with the lifting" levels; occasionally do "any type of climbing, stoop, crouch, or kneel;" and "frequently crawl." (*Id.*) Further, the ALJ stated the hypothetical "individual should avoid concentrated exposure to unprotected height." (*Id.*) Mentally, the ALJ stated Mr. Raschke should consider someone "capable of constant, simple repetitive task, occasional complex task." (*Id.*) Mr. Raschke opined that Plaintiff's past work was "going to be eliminated on exertional balance alone." (*Id.*) In addition, Mr. Raschke stated Plaintiff's work as a teacher's aide was "a little bit more than simple, repetitive, and occasionally complex work" as "a semi-skilled job" that requires a person "to be on the whole time you're working because of the population you're working." (*Id.*)

Mr. Raschke also opined a person with the limitations identified and the same age, education, and past work experience as Plaintiff could perform work in the national economy. (Doc. 11-6 at 44) He stated he would look at sedentary positions and "move in the direction of production environments." (*Id.*) Mr. Raschke testified the hypothetical individual could work in the positions of shade assembler, *DOT* 739.684-094; eyewear lens block ager, *DOT* 716.687-030; and telephone quote clerk, DOT 237.367-042. (*Id.* at 44-45) He explained there were "many jobs [the] hypothetical individual could perform at the sedentary level and some jobs that may even be performed at the light," and the question was "whether the job requires the person to be on their feet longer than four hours." (*Id.* at 45)

Second, the ALJ asked Mr. Raschke to consider a hypothetical individual who could lift or carry occasionally 20 pounds, frequently 10; stand or walk two hours of an eight-hour work day; sit six hours in an eight-hour work day, but no more than 45 minutes continuously; never climb ladders, ropes, or scaffolds; and occasionally climb stairs, stoop, crouch, kneel, and crawl. (Doc. 11-6 at 47) In addition,

---

[5] The *Dictionary of Occupational Titles* includes Special Vocational Preparation ("SVP") levels for each vocation, which indicates "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1231, n. 4 (9th Cir. 2009) (quoting *DOT*, Appendix C, p. 1009 (4th ed.1991)). For example, the Commissioner has determined that certain SVP Levels 1 and 2 in the Dictionary of Occupational Titles correspond with the definition of unskilled work. SSR 00-4p, 2000 SSR LEXIS 8.

the individual was "cognitively capable of constant, simple, repetitive task[s];" occasional complex tasks; and "no more than occasional contact with the public, co-workers, or supervisors." (*Id.*) Mr. Raschke opined the individual could perform the same positions as previously identified, because they were "all task jobs, little or no public contact, same with supervisors." (*Id.* at 48)

Mr. Raschke testified that if an individual "would miss four days of work a month," on an unscheduled basis, it "would eliminate any work." (Doc. 11-6 at 48) He explained that was "way outside the bounds of acceptable of any business or industry." (*Id.*) Likewise, if the "individual would be at least 20 percent off task," based upon the findings of Dr. Dang, that was outside what [he] would consider to be competitive employment." (*Id.* at 48)

**C.     Vocational Expert Interrogatories**

On January 5, 2016, the ALJ requested vocational expert Nancy Rynd complete interrogatories related to Plaintiff's application. (Doc. 11-11 at 18) Specifically, the ALJ asked Ms. Rynd:

> Assume a hypothetical individual who was born on November 16, 1974, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described ... Assume further that this individual has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift [or] carry 20 pounds occasionally and 10 pounds frequently; stand or walk for hours of an 8 hour workday sit about 6 hours of an hour workday; push or pull consistent with the lifting and carrying described above; occasionally do the following any type of climbing, stoop, crouch, or kneel, frequently, crawl; avoid concentrated exposure to hazardous work environment; cognitively capable of constant simple repetitive tasks, but only occasional detailed and complex instructions; able to maintain concentration over work activities for a continuous 2 hour period; will require supervisor to provide additional instructions over continuing job duties as well as changes in a routine setting once every 2 months; can be anticipated in this one day of work on an unscheduled basis every 3 months.

(*Id.* at 20) Ms. Rynd opined a person with these limitations could not perform Plaintiff's past relevant work, because each of the positions "require[d] more than occasional interaction with the public." (*Id.*)

The ALJ also inquired whether an individual with the above limitations could "perform any unskilled occupations with jobs that exist in the national economy." (Doc. 11-11 at 21) Ms. Rynd responded such a person could work as a hotel housekeeper, *DOT* 323.687-014; office helper, *DOT* 239.567-010; and photocopy machine operator, *DOT* 207.685-014. (*Id.*) Ms. Rynd indicated each of these positions had an SVP level of 2 and required light exertion. (*Id.*)

///

7

**D. The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity "during the period from her alleged onset date of March 3, 2011 through her date last insured of December 31, 2015." (Doc. 11-3 at 19) Second, the ALJ found Plaintiff had the following severe impairments: affective, anxiety, and personality disorders; intellectual disability; vaginitis; ovarian cysts; and obesity. (*Id.* at 20)

At step three, the ALJ found Plaintiff's impairments did not meet or medically equal a Listing. (Doc. 11-3 at 20-22) In making this finding, the ALJ considered the "paragraph B" criteria under Listings 12.04 (affective disorder), 12.05 (borderline intellectual functioning), 12.06 (anxiety disorder), and 12.08 (personality disorder). (*Id.* at 20) The ALJ found Plaintiff had "mild restriction" with activities of daily living. (*Id.*) In addition, the ALJ determined Plaintiff had "moderate difficulties" with social functioning and "concentration, persistence, or pace." (*Id.* at 20-21)

Next, the ALJ determined:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk for 4 hours in an 8-hour day, sit for about 6 hours in an 8-hour day, push or pull consistent with the lifting and carrying described above, occasionally climb, stoop, crouch, or kneel, frequently crawl, and avoid concentrated exposure to hazardous work environment. The claimant is cognitively capable of constant repetitive tasks, but only occasional detailed and complex instructions. She can maintain concentration over work activities for a continuous 2-hour period. She will require a supervisor to provide additional instructions over continuing job duties as well as changes in a routine work setting once every 2 months. She can be anticipated to miss one day of work on an unscheduled basis every three months. She can have occasional interaction with the public, supervisors, and coworkers.

(Doc. 11-3 at 23) With this residual functional capacity, the ALJ found at step four that Plaintiff "was unable to perform any past relevant work," but "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (*Id.* at 28-29) Therefore, the ALJ concluded Plaintiff was not disabled "at any time from March 3, 2011, the alleged onset date, through December 31, 2015, the date last insured." (*Id.* at 30)

**DISCUSSION AND ANALYSIS**

Plaintiff argues that the ALJ erred in evaluating the medical evidence, including the opinion from Dr. Dang. (Doc. 17 at 4) In addition, Plaintiff contends the ALJ arbitrarily determined

8

limitations in the RFC, and "failed to include any limitation in pace." (*Id.* at 7) The Commissioner argues that "[t]he ALJ properly evaluated the medical opinion evidence." (Doc. 18 at 7, emphasis omitted)

**A.     Evaluation of Medical Opinions**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Thus, the courts apply a hierarchy to the opinions offered by physicians.

A physician's opinion is not binding upon the ALJ and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of a conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

The ALJ addressed the opinions of Dr. Dang by stating:

> Christopher Dang, M.D. and Ranjit Padhy, M.D. opined in November of 2013 that the claimant had mild to moderate impairments in various life functioning areas. From December of 2013 through December of 2014, both or one of these doctors checked a box stating the claimant was not able to work. (Exs. 4F, 13F.) Little weight is accorded to these opinions because they are inconsistent with the treatment records, clinical findings, moderate Global Assessment of Functioning scores, and the claimant's

> reported symptoms. I noted two blank short form evaluations for mental disorders the doctors appear not have completed in the record. (Exs. 4F, SF.)
>
> On September 23, 2014, Dr. Dang opined the claimant would likely miss five days or more due to her mental impairments, and answered other mental residual functional capacity questions. Dr. Dang's same report is marked and entered into the record at exhibits 9F and 24F. Exhibit 24F includes all the pages of the report, while Exhibit 9F is missing page 2. The extreme limits identified in the document are not corroborated by Dr. Dang's treatment or other medical evidence. (Exs. 14F, l 7F, 25F.) For example, Dr. Dang's initial treatment of the claimant in November of 2013 is not consistent with a GAF of 55. The doctor did not support his opinion with clinical signs or a sufficient narrative to be persuasive. Therefore, I accord it only some weight.

(Doc. 11-3 at 26) Plaintiff does not challenge the ALJ's rejection of the opinions offered on the ultimate issue of whether she was able to perform work.[6] (*See generally* Doc. 17 at 4-10) However, Plaintiff contends the ALJ failed to identify legally sufficient reasons for rejecting the limitations identified by Dr. Dang in his dated September 23, 2014. (*Id.*)

    1.       Inconsistency with treatment and other medical evidence

The Ninth Circuit has determined an ALJ may reject a medical opinion when an ALJ finds inconsistencies between a treating doctor's assessment and his own medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In addition, an ALJ may reject limitations "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)). However, as Plaintiff argues, "[m]erely stating that the assessment is not corroborated by the records is insufficient to satisfy the specific and legitimate standard." (Doc. 17 at 7)

When an ALJ believes the treating physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts *and conflicting clinical evidence*, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (emphasis added); *see also Reddick v. Chater*, 157 F.3d 715, 725

---

[6] Notably, a physician's opinion on the ultimate issue of disability is not entitled to controlling weight, because statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not medical opinions" under the Regulations. 20 C.F.R. §§ 404.1527(e), 416.927(e). Rather, an ALJ "is precluded from giving any special significance to the source; e.g., giving a treating source's opinion controlling weight" when it is on an issue reserved to the Commissioner, such as the ultimate issue of disability. Social Security Ruling (SSR) 96-5p6, 1996 SSR LEXIS 2 at *7, 1996 WL 374183 at *3, (July 2, 1996); *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[t]he law reserves the disability determination to the Commissioner"); *Martinez v. Astrue*, 261 Fed. App'x 33, 35 (9th Cir. 2007) ("the opinion that [a claimant] is unable to work is not a medical opinion, but is an opinion about an issue reserved to the Commissioner. It is therefore not accorded the weight of a medical opinion.")

(9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). For example, an ALJ may also discount the opinion of a treating physician by identifying an examining physician's findings to the contrary and identifying the evidence that supports that finding. *See, e.g., Creech v. Colvin*, 612 F. App'x 480, 481 (9th Cir. 2015).

Although the ALJ opined "Dr. Dang's initial treatment of the claimant in November of 2013 is not consistent with a GAF of 55," the ALJ failed to explain how. In addition, the ALJ fails to explain how the treatment received and the GAF score were not consistent with the limitations identified in the mental residual functional capacity questionnaire. Likewise, the ALJ fails to identify any specific evidence in the record that conflicts with the limitations identified by Dr. Dang, which included limitations with Plaintiff's ability to stay on task, perform work on a sustained basis, maintain attention and concentration, and "perform at a consistent pace without an unreasonable number and length of rest periods." (*See* Doc. 11-15 at 76-77; Doc. 11-20 at 24-26) Because the ALJ failed to meet the burden to identify specific evidence that conflicted with the limitations identified by Dr. Dang, the ALJ erred in rejecting the opinions of Dr. Dang on the basis of inconsistencies with the record.[7]

### 2. Failure to identify clinical signs

The ALJ also indicated he gave only "some weight" to the limitations identified by Dr. Dang because "[t]he doctor did not support his opinion with clinical signs or a sufficient narrative." (Doc. 11-3 at 26) Importantly, an ALJ may reject the opinion of a physician because it lacks the support of "objective medical signs and findings." *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989).

In a Social Security Ruling, the Commissioner explained the opinion of a physician is not entitled to controlling weight when the "opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques *or* is inconsistent with the other substantial evidence in the case

---

[7] Importantly, the Court is "constrained to *review* the reasons the *ALJ* asserts." *Brown-Hunter*, 806 F.3d at 494 (emphasis in original) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)); *Bray v. Comm'r*, 554 F.3d 1219, 1229 (9th Cir. 2009) (the Court cannot engage in "*post hoc* rationalizations that attempt to intuit what the [ALJ] might have been thinking").
Although the Commissioner identifies evidence in the record to support a conclusion that the limitations identified by Dr. Dang were not consistent with the findings in the treatment notes, including Plaintiff's ability to "maintain[] intact attention and concentration," (*see* Doc. 18 at 10) this evidence was neither identified by the ALJ in his analysis of the medical opinions nor identified *by the ALJ* as conflicting with the opinion of Dr. Dang. Consequently, the Court is unable to find the conflicts now identified by the Commissioner support the ALJ's decision.

11

record." SSR 96-2p, 1996 SSR LEXIS 9, at *9 (emphasis added). Although Social Security Rulings issued by the Commissioner to clarify regulations and policies do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989). Consequently, the Ninth Circuit determined the opinion of a treating physician may be rejected when it is "conclusory and brief" and lacks support of clinical findings. *Magallanes*, 881 F.2d at 751; *see also Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (an opinion may be rejected "if brief and conclusory in form with little in the way of clinical findings to support [its] conclusion"); *Crane v. Shalala*, 76 F.3d 251, 253(9th Cir. 1996) (finding "[t]he ALJ permissibly rejected... reports that did not contain any explanation of the bases of their conclusion").

On the questionnaire, Dr. Dang indicated that he based the opinions upon Plaintiff's history and medical file; progress and office notes; laboratory reports; and psychological evaluations, reports, and opinions. (Doc. 11-20 at 27) However, Dr. Dang did not identify any specific objective findings upon which the opinions were based. Notably, Plaintiff fails to address this reason identified by the ALJ for giving less weight to the opinion. (Doc. 17 at 5) (erroneously arguing the ALJ did "not give any other specific reason to reject Dr. Dang's opinion" beyond the inconsistency with treatment notes) As explained above, the lack of support is a specific, legitimate reason for rejecting the opinion of a treating physician. *See Young*, 803 F.2d at 968; *Crane*, 76 F.3d at 253. Thus, Dr. Dang's failure to identify any clinical findings supports the ALJ's decision to give his opinions reduced weight.

**B.    The Residual Functional Capacity**

Plaintiff's also contends the ALJ erred in determining her mental residual functional capacity, through the failure "to include any limitation in pace." (Doc. 17 at 7) A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating an RFC, the ALJ weighs medical opinions and the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1226 (9th Cir.

2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments," whether severe or not, when assessing an RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

Plaintiff observes that Dr. Zhang "assessed moderate limitations in pace" and Dr. Dang also assessed pace limitations. (Doc. 17 at 7) Dr. Zhang opined Plaintiff had "had moderate impairments with maintaining "concentration, persistence, and pace in common work settings" and performing routine work duties. (Doc. 11-20 at 41) Dr. Dang opined Plaintiff's impairments precluded her ability to maintain attention and concentration for 10% of an eight-hour day; and "perform at a consistent pace without an unreasonable number and length of rest periods" for 10% of a workday. (Doc. 11-20 at 25-26) Indeed, the ALJ also concluded Plaintiff had "moderate difficulties" with "concentration, persistence, or pace." (Doc. 11-3 at 20)

The Commissioner argues the ALJ's conclusion "that Plaintiff could constantly perform repetitive tasks [was]... consistent with Dr. Zhang's finding of moderate impairment in concentration, persistence, and pace." (Doc. 18 at 9) However, courts have determined that even a restriction to *simple*, repetitive tasks—which involves a greater limitation than identified by the ALJ herein[8]— does not adequately incorporate moderate limitations in concentration, persistence, or pace found at step two. *See, e.g., Brink v. Comm'r Soc. Sec. Admin.,* 343 F. App'x 211 (9th Cir. 2009) (although the ALJ accepted the claimant's moderate restrictions as to concentration, persistence, and pace, the ALJ failed to address these specific restrictions in the claimant's RFC and in his hypothetical questions with a restriction to "simple, repetitive work."); *Lubin v. Comm'r of Soc. Sec. Admin.,* 507 F. App'x 709, 712 (9th Cir. 2013) ("Although the ALJ found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert."); *Duong v. Astrue*, 2012 WL 3648006, at *5 (E.D. Cal. Aug. 22, 2012) (finding an RFC that limited the claimant to "simple, repetitive work" failed to incorporate limitation in concentration, persistence, and pace that ALJ had accepted); *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996) (holding a limitation to simple

---

[8] The Court notes the hypothetical questions posed to the vocational experts included limitation to simple tasks with occasional detailed or complex tasks. (*See* Doc. 11-6 at 43, 47; Doc. 11-11 at 21) Thus, it may have been a typographical error for the ALJ to omit the word "simple." Nevertheless, the limitations assessed by the ALJ are less than those addressed by the Ninth Circuit in *Brink* and *Lubin*, where the claimants could not perform occasional detailed or complex tasks and were limited to only simple tasks.

13

jobs did not adequately represent a deficiency in concentration, persistence or pace).

It is undisputed that several physicians opined Plaintiff had difficulties with concentration, persistence, and pace, and the ALJ clearly accepted these findings with his own conclusion that Plaintiff had moderate difficulties. (*See* Doc. 11-3 at 20) However, the ALJ failed to provide any explanation as to how the restriction to "constant repetitive tasks" with "occasional detailed and complex instructions" accounted for Plaintiff's difficulty with pace. Because the ALJ did not address Plaintiff's difficulties in pace, the RFC did not adequately address Plaintiff's limitations.

## C. Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the ALJ erred in evaluating Plaintiff's residual functional capacity and her limitations with pace as assessed by Drs. Dilger, Dang, and Zhang. This is clearly related to the hypothetical questions posed to the vocational experts, who must consider "all of the claimant's impairments." *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Accordingly, further proceedings are appropriate for the ALJ to reconsider Plaintiff's mental residual functional capacity and obtain testimony from a vocational expert regarding Plaintiff's mental limitations.

///
///

14

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ failed to apply the correct legal standards in formulating Plaintiff's mental residual functional capacity, and the ALJ's decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Rachel Michelle Twilley, and against Defendant, Andrew M. Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **August 9, 2019**          **/s/ Jennifer L. Thurston**
                                   UNITED STATES MAGISTRATE JUDGE